# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

EDDIE P. BURROUGHS,

Defendant.

**Criminal No. 12-33 (CKK)**

## MEMORANDUM OPINION
(August 10, 2012)

Defendant Eddie P. Burroughs is charged by indictment with one count of unlawful possession with intent to distribute 280 grams or more of cocaine base, one count of unlawful possession with intent to distribute cocaine, and one count of unlawful possession with intent to distribute marijuana. The charges arise from narcotics recovered from the Defendant's purported residence pursuant to a search warrant executed by the District of Columbia Metropolitan Police Department in December 2011. Presently before the Court is the Defendant's [20] Motion to Suppress Tangible Evidence & for Hearing Pursuant to *Franks v. Delaware*. Defendant's motion alleges three deficiencies in the search: (1) material false statements and omissions in the affidavit submitted in support of the search warrant application; (2) a lack of probable cause from the face of the affidavit; and (3) misconduct relating to the search warrant return. Upon consideration of the parties' pleadings[1] and the record presented for purposes of this motion, the Court finds that (1) Defendant failed to make the substantial showing of material false statements

---

[1] *See* Def.'s Mot., ECF No. [20]; Gov't Opp'n, ECF No. [24]; Def.'s Reply, ECF No. [27]; Def.'s Suppl., ECF No. [28]; Gov't Resp. to Def.'s Reply ("Gov't Sur-reply"), ECF No. [29]; Def.'s Second Suppl. Reply ("Def.'s Sur-reply"), ECF No. [30]; Gov't Suppl. Resp. to Def.'s Reply ("Gov't Suppl. Sur-reply"), ECF No. [32]; Def.'s Reply to Gov't Resp. ("Def.'s Final Reply"), ECF No. [33].

and omissions required to obtain a *Franks* hearing; (2) the affidavit stated sufficient facts from which the issuing judge could find probable cause; (3) even if the affidavit lacked probable cause, the evidence recovered should not be suppressed; and (4) none of the purported issues with the search warrant return require suppression of the physical evidence seized during the search.

## I. BACKGROUND

The charges against the Defendant arise out of the investigation of two other offenses with which the Defendant has not been charged.  The facts that follow are undisputed unless otherwise noted.  The Court shall also briefly address the procedures associated with search warrants in the District of Columbia.

*A.    Factual Background*

On November 26, 2011, at approximately 12:15 AM, two black males allegedly robbed Complainants "1" and "2" at gun point.  Def. Ex. 1 (Search Warrant) at 1.  The suspects took $374 in United States currency, a Virgin Mobile cellular telephone, and a black wallet containing personal papers, receipts, and a white access card from Complainant 1.  *Id.*  From Complainant 2, the suspects took an iPod Shuffle and a Samsung Transformer cellular telephone.  *Id.*

According to the MPD arrest report of the Defendant, at approximately 1:00 AM on November 26, 2011, MPD Officer J. Wade spotted a white Dodge Charger in Southeast Washington, D.C., which Officer Wade believed matched the "lookout" for a vehicle involved in an armed carjacking in Prince Georges County earlier that evening.  Gov't Ex. A, (11/26/11 Arrest Report), at 1, 2.  Officer Wade engaged the vehicle and, with the aid of the MPD air support unit, pursued the vehicle after it began to flee.  *Id.* at 2.  Officer Wade followed the vehicle as it drove on and off the interstate, before finally stopping at 3425 5th Street, Southeast,

Washington, D.C.  *Id.*  Once the vehicle stopped, four individuals exited the vehicle and fled on foot.  *Id.*  With the assistance of the air support unit, officers apprehended the Defendant and two other individuals at approximately 1:35 AM.  *Id.*  The air support unit noted that prior to the suspects exiting the Dodge Charger, there were no individuals in the area in which the Defendant and other suspects were apprehended.  *Id.*

Upon his arrest, the Defendant was transported to the Seventh District Station and searched.  Detective James Francis removed approximately $740 in United States currency, receipts, and a black wallet containing a white plastic card from Defendant's pants pockets.  Def. Ex. 1 at 2.  The Defendant was charged with unauthorized use of a vehicle ("UUV"), but the charge was dismissed for lack of probable cause on November 29, 2011, and Defendant was released.  *See District of Columbia v. Burroughs*, 2011 CF2 022837 (D.C. Superior Ct. filed Nov. 26, 2011).  On December 2, 2011, Detective Francis showed the wallet and receipts to one of the complainants, who identified the items as those taken from the complainant during the robbery.  Def. Ex. 1 at 3.  On the basis of this identification, Detective Francis executed an affidavit in support of a search warrant application for 3400 13th Street, Southeast, Apartment 301, Washington, D.C., which the Defendant identified as his residence when arrested on the UUV charge.  *Id.*  The property manager for the residence also confirmed that the Defendant resided at the apartment.  *Id.*  A District of Columbia Superior Court ("Superior Court") judge authorized the search warrant on December 3, 2011.  *Id.*

MPD officers executed the search warrant on December 5, 2011.  Def. Ex. 1 at 3.  In addition to mail addressed to the Defendant, officers allegedly recovered 9.5 pounds of marijuana, 114 grams of powder cocaine, over two kilograms of crack cocaine, $9,900 in United States currency, scales, and other drug trafficking paraphernalia.  Def.'s Ex. 2 (Signed Search

Warrant Return). The Grand Jury returned an indictment against the Defendant on February 7, 2012, charging Defendant with one count of unlawful possession with intent to distribute 280 grams or more of cocaine base in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), one count of unlawful possession with intent to distribute cocaine in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and one count of unlawful possession with intent to distribute marijuana in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(D).

> B.      *District of Columbia Search Warrant Procedure*

When an authorized individual submits an affidavit and search warrant application to a Superior Court judge, if the judge authorizes the warrant, the Superior Court will scan the affidavit and search warrant, and return the originals to the affiant. Gov't Suppl. Sur-Reply ¶ 1. Upon executing the search warrant, officers are required to leave a copy of the search warrant and an inventory of the property taken must be given to the owner if present, or an occupant. D.C. SCR-Crim. R. 41(e). If no one is present at the time the search warrant is executed, officers must post a copy "of the warrant and of the return on the place" that was searched. *Id.* "A copy of the warrant shall be filed with the Court on the next court day after its execution, together with a copy of the return." D.C. SCR-Crim. R. 41(f); *accord* D.C. Code § 23-524(d). The affiant takes the original affidavit, search warrant, and completed return to the relevant Superior Court Judge, who then signs the return. Def.'s Final Reply ¶ 3; Gov't Suppl. Sur-reply ¶ 2; Def. Ex. 3 (Signed Search Warrant Return). The judge retains the original documents and provides them to the Superior Court Special Proceedings Branch. Def.'s Final Reply ¶ 3; Gov't Suppl. Sur-reply ¶ 3. The Special Proceedings Branch scans the affidavit, search warrant, and signed return into an

electronic database, then shreds the original documents.[2]  Gov't Suppl. Sur-reply ¶ 3.  Copies of

the scanned version are provided to the affiant and the Narcotics Branch of the United States

Attorney's Office.  Def.'s Final Reply ¶ 4.

## II.  LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation."  U.S. Const. amend. IV.  "To demonstrate probable cause to

search premises, an affidavit must set forth facts sufficient to induce a reasonably prudent person

to believe that a search thereof will uncover evidence of a crime."  *United States v. Laws*, 808

F.2d 92, 94 (D.C. Cir. 1986).  When police obtain evidence by way of an unlawful search, the

exclusionary rule may require exclusion of that evidence in some circumstances."  *United States*

*v. Glover*, 681 F.3d 411 (D.C. Cir. 2012).  However, as the D.C. Circuit explained,

> [T]he exclusionary rule has limited force in cases involving a search with a search
> warrant.  In particular, reviewing courts may not exclude evidence "when an
> officer acting with objective good faith has obtained a search warrant from a
> judge or magistrate and acted within its scope."  *United States v. Leon*, 468 U.S.
> 897, 920 (1984). The reason is evident: "In the ordinary case, an officer cannot be
> expected to question the magistrate's probable-cause determination or his
> judgment that the form of the warrant is technically sufficient."  *Id.* at 921. The
> "exclusionary rule was adopted to deter unlawful searches by police, not to punish
> the errors of magistrates and judges."  *Massachusetts v. Sheppard*, 468 U.S. 981,
> 990 (1984) (citation omitted).

*Id.* at 418-19.  Courts have recognized three exceptions to the good faith principle articulated in

*Leon*.  Specifically, exclusion may be appropriate regardless of the good faith of the officer

executing the warrant if (1) "the magistrate or judge in issuing a warrant was misled by

information in an affidavit that the affiant knew was false or would have known was false except

for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned [her]

---

[2]  The Special Proceedings Branch does retain the original documents for sealed search
warrants, but the search warrant at issue in this case was not under seal.  Gov't Suppl. Sur-reply
¶ 3.

judicial role"; or (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks and citations omitted); *e.g.*, *Glover*, 681 F.3d at 419; *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008).

In this case, the Defendant invokes the first *Leon* exception, as originally set forth in *Franks v. Delaware*, 438 U.S. 154 (1978).   Pursuant to *Franks*, if the defendant makes a "substantial showing" that false statements were included in or material facts omitted from a search warrant affidavit, the Court must hold an evidentiary hearing.   *United States v. Maynard*, 615 F.3d 544, 550-51 (D.C Cir. 2010).   "A movant seeking to obtain a *Franks* hearing must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth."   *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (internal quotation marks and citations omitted).   "For an omission to meet the *Franks* standard, the officer must at least have knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause."   *United States v. Glover*, 681 F.3d 411, 419 (D.C. Cir. 2012).   "An affidavit offered in support of a search warrant enjoys a 'presumption of validity.'"   *Maynard*, 615 F.3d at 550 (quoting *Franks*, 438 U.S. at 171).   In order to overcome that presumption and obtain an evidentiary hearing, the Defendant must make a "substantial showing" that is "'more than conclusory' and 'accompanied by an offer of proof.'" *Id.* (quoting *United States v. Gaston*, 357 F.3d 77, 80 (D.C. Cir. 2004)).

### III. DISCUSSION

The Defendant seeks to suppress the search warrant and seized materials on three grounds: (1) Detective Francis made material false statements and omitted material information

from his search warrant affidavit; (2) the search warrant affidavit did not establish probable cause; and (3) Detective Francis engaged in misconduct relating to the search warrant return. None of these arguments are persuasive.  First, the Defendant failed to show that any statements or omissions in the affidavit were in fact false, material, or made with reckless disregard for the truth.  Therefore, a *Franks* hearing is not necessary.  Second, the affidavit on its face provided sufficient facts from which the issuing judge could find probable cause. Third, any purported delay in returning the search warrant amounts to only a ministerial error.  Fourth, Detective Francis did not "alter" the search warrant before returning it to the Court; he merely added the actual weight of narcotics and amount of currency purportedly seized during the search.  Thus, the search warrant return does not provide a basis for an evidentiary hearing or suppression of the fruits of the search.

      A.    *Defendant Failed to Make a Substantial Showing Warranting a* Franks *Hearing*

Defendant contends the Court should hold an evidentiary hearing because Detective Francis made false statements and omitted material information from the affidavit.  As explained below, the Defendant failed to show that the purported false statements were false, material to the finding of probable cause, or made with reckless disregard for the truth requiring the Court to hold a *Franks* hearing.  Furthermore, the Defendant failed to show that the omitted information was material, or omitted with reckless disregard for the truth.

      1.    <u>Detective Francis Did Not Include Any False Statements in the Affidavit.</u>

The Defendant claims Detective Francis falsely stated (1) the time Defendant was arrested in connection with the UUV charge; (2) which complainant identified the items recovered from the Defendant upon his arrest for the UUV charge; and (3) the fact that the identification took place at all.  Def.'s Mot. at 4-5.  The Court will examine each purported

falsehood in turn.

a.      Time of the UUV Offense.

The Defendant claims Detective Francis falsely stated the time at which the UUV offense purportedly took place.  The Defendant notes that although the affidavit asserts that the pursuit of the Dodge Charger commenced at approximately 1:15 AM on November 26, 2011, Def. Ex. 1 at 1, a report from the Prince George's County Police indicates the MPD chase and arrest of the suspects occurred at 2:30 AM on November 26, 2011, Def. Ex. 2 (Prince George's County Police Incident Report) at 2.  In response, the Government submitted the arrest report of the Defendant filed by Officer Wade, which confirmed that Officer Wade engaged the vehicle at approximately 1:18 AM, and the suspects were arrested at 1:35 AM.  Gov't Ex. 1 at 1.

The Defendant's attempt to portray Detective Francis' statement as false and misleading is unpersuasive for three reasons.  First, the Defendant offers no explanation as to why the Court should credit the report from the Prince George's County Police as opposed to the MPD report of Defendant's arrest since it was an MPD officer who engaged in the pursuit of the vehicle. Officer Wade, the officer that pursued the vehicle suspected of involvement in the carjacking, completed an arrest report on November 26, 2011---six days before officers applied for a search warrant---indicating the pursuit began around 1:15 AM.  There is no reason to believe the Prince George's County Police report is more accurate than MPD's own records.

Second, even if the UUV took place at 2:30 AM and not at 1:15 as asserted by both MPD Officer Wade and MPD Detective Francis, there is no evidence in the record to indicate that Detective Francis made the purportedly false statement knowingly, intentionally, or with reckless disregard for the truth.  *Glover*, 681 F.3d at 419.  Mere negligence in misstating a fact in a search warrant affidavit, which the Defendant has not even shown, is insufficient to trigger a *Franks*

hearing.  *United States v. Davis*, 621 F.2d 677, 694 (D.C. Cir. 1979).  The Defendant offers no evidence to show Detective Francis' had a nefarious intent in stating the time of the UUV offense, therefore a *Franks* hearing is not warranted.  *Maynard*, 615 F.3d at 551.  Defendant's speculation that (1) the arrest report and affidavit include the incorrect time, and (2) Detective Francis recklessly or intentionally misstated the time of the UUV offense in the affidavit, falls far short of the substantial showing necessary before the Court may investigate the affidavit further. *Id.*

Third, Defendant fails to demonstrate that inclusion of the "correct" time of the UUV offense in the affidavit would have defeated probable cause.  Since the armed robbery took place at 12:15 AM, if the affidavit had stated that the Defendant was apprehended at 2:30 AM, there would still be sufficient facts from which the judge could have found probable cause, namely the identification of items by the robbery complainant.  A seventy-five minute difference in the time of Defendant's arrest would not have defeated probable cause, and thus is immaterial under *Franks*.  *Glover*, 681 F.3d at 419.

b.    Identification of Items Taken from the Defendant.

The Defendant claims that Detective Francis fabricated the identification of items by the robbery complainant because officers at the Seventh District Police station allegedly "returned Mr. Burroughs his property on November 26th upon his release."  Def.'s Mot. at 6.  Though the Defendant did not pursue this argument in his Reply or Sur-reply, for the sake of completeness, the Court shall address the issue.  The Government explained that although some of the property taken from the Defendant upon his arrest was returned upon his release, the wallet, receipts, and white card were withheld, and today remain in the custody of MPD.  Gov't Sur-reply at 4.  In light of the Government's explanation of the identification procedure for the items that were not

returned to the Defendant, the Defendant's claim is nothing more than conclusory, and thus insufficient to warrant a *Franks* hearing. *Gaston*, 357 F.3d at 80.

The Defendant also takes issue with Detective Francis' explanation of the identification of items taken from the Defendant by one of the robbery complainants. Detective Francis' affidavit indicates that on December 2, 2011 "Complainant 2" identified the wallet and papers taken from the Defendant upon his arrest as items taken from the Complainant during the armed robbery. Def.'s Ex. 1 at 2. The Defendant notes that earlier in the affidavit, Detective Francis detailed the items purportedly taken from each complainant during the robbery, but did not indicate that Complainant 2 had a wallet or papers stolen. *Id.* at 1. Accordingly, the Defendant alleges that "the affiant, in the report of Complainant #2's losses, made a false statement with reckless disregard for the truth." Def.'s Mot. at 5.

In response, the Government contends the reference to "Complainant 2" as the individual identifying the items taken from the Defendant is nothing more than a typographical error. The Government asserts---and the Defendant does not contest---that the unredacted version of the affidavit (not provided to the Court by either party), identifies the Complainant who performed the identification by the last name of the original "Complainant 1." "[M]inor clerical errors generally are not fatal to a search warrant." *United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008); *accord*, *e.g.*, *id.* (collecting cases); *United States v. Felder*, 457 F. App'x 316, 322 (4th Cir. 2011). An incorrect reference to the complainant number, particularly where the complainant is accurately identified by name, is insufficient evidence that the Officer knowingly or recklessly misidentified the complainant. *See United States v. Norris*, 640 F.3d 295, 301-02 (7th Cir. 2011). Ultimately, since the name of the complainant was accurately stated, there is no evidence the erroneous reference to "Complainant 2" was material to the finding of probable

cause.

2.      Detective Francis Did Not Omit Any Material Information from the Affidavit.

The Defendant further contends that a *Franks* hearing is necessary in light of Detective Francis' omission of material facts from the search warrant affidavit, namely, the geographic location of the armed robbery and the carjacking that preceded the UUV offense.  Def.'s Mot. at 6.   The Defendant argues that absent this information, the affidavit did not include facts sufficient to link the robbery with the premises to be searched.  *Id.*   For purposes of certain offenses, geographic proximity *may* be relevant to probable cause to search a particular place. The Defendant cites a number of cases that found narcotics activity observed away from a residence did not create probable cause to search the suspects' respective residences.  *See* Def.'s Reply at 2 n.1.  But as the cases cited by the Defendant explain, the relevant question is not one of geography, but "whether it is reasonable to believe that the items to be seized will be found in the place to be searched."  *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978)).   Detective Francis' affidavit explained that assailants involved in violent crimes often keep items taken for personal use, or sell them.  Def. Ex. 1 at 2.  Since some of the items taken from the Complainants had not yet been recovered, there was probable cause to believe that the remaining items would be found at the Defendant's residence.  *Id.*  The question of whether the cellular telephones and other items would be recovered from the residence at issue was based on the nature of the crime committed and the items taken, *not* where the armed robbery took place.  Defendant offers no explanation as to why the geographic location of the armed robbery would have been relevant to, much less defeated, the finding of probable cause.

B.       *Detective Francis' Affidavit on its Face Provides Sufficient Facts to Find Probable Cause.*

Before addressing Defendant's second argument, the Court notes that under *Leon*, if the MPD officers relied on the search warrant in good faith, the evidence seized during the search would not be suppressed, even if the Court agreed with the Defendant that the affidavit did not establish probable cause. *Supra*, Section II. In this case, there is no indication that the officers' reliance on the warrant was unreasonable, or that any of the remaining *Leon* exceptions apply. Accordingly, suppression is not appropriate in this case.

Nevertheless, if the Court were to evaluate the sufficiency of the affidavit, the affidavit provides sufficient facts to support the judge's finding of probable cause. The Defendant identifies two purported deficiencies in the affidavit: (1) the lack of evidence of a nexus between the armed robbery and the premises to be searched; and (2) the staleness of relevant information at the time the warrant was issued. Contrary to Defendant's assertion, the affidavit articulated an adequate nexus between the robbery and the premises to be searched, and the information relied upon by Detective Francis was not stale.

1.       The Affidavit States Sufficient Evidence of a Nexus Between the Robbery and the Premises to be Searched.

The parties agree on the standard required to show a "nexus" between evidence of criminal activity obtained by officers and the premises to be searched: the issuing judge need only find a "reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993). What the Defendant takes issue with is the fact that the affidavit relies primarily on Detective Francis' experience in order to establish a nexus between the items taken during the robbery and the residence in question. Defendant relies on the Sixth Circuit case of

*United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), for the proposition that an officer's training and experience cannot, without more, establish a sufficient nexus to the premises to be searched.  The *Schultz* court found that the affiant's assertion that, based on his training and experience, it was not uncommon for narcotics traffickers to keep evidence of drug distribution in safety deposit boxes, was insufficient to establish probable cause to search the box.[3]  *Id.* Unlike the pure speculation linking the safety deposit box in *Schultz* to narcotics activity, it was not a "mere guess" on Detective Francis' part to believe that cellular telephones and an iPod taken during the robbery would be found at the premises believed to be the Defendant's residence.  It takes a leap of logic to believe a narcotics trafficker would record transactions and store that information in a safety deposit box, but not to infer that a robber would keep cellular telephones and an iPod *in his apartment*.  The Sixth Circuit itself has rejected *Schultz* in cases where the relationship between the offense and the premises to be searched is "more obvious than the connection between drug trafficking and safety deposit boxes," as is the case here. *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006).  For example, in *United States v. Blakeney*, 942 F.2d 1001 (6th Cir. 1991), a case which pre-dates *Schultz*, the affidavit reflected evidence that connected three associates to Blackeney, and connected all three individuals to Blackeney's residence.  *Id.* at 1024.  The affidavit further indicated that items taken during a jewelry store robbery were found in a hotel room occupied by two of the suspects, but the remaining items were not recovered from Blackeney's car.  *Id.*  From this evidence, the magistrate judge issued a search warrant for Blackeney's residence, and the Sixth Circuit found there was a "substantial basis" for the magistrate's conclusion that evidence of the robbery would

---

[3]  Notably, the *Schultz* court, relying on *Leon*, did <u>not</u> suppress the evidence obtained from the safety deposit box.  14 F.3d at 1098.

13

be found in Blackeney's residence. *Id.* at 1024-25. Similarly, in *United States v. Jenkins*, 901 F.2d 1075 (11th Cir. 1990), the Eleventh Circuit found that

> the combination of a finding of probable cause that Jenkins committed the theft, the fact that the contraband stolen was composed of items which are capable of being hidden in a residence, and the statement of an agent who had ten years' experience investigating bank robberies provided sufficient probable cause to justify a search of Jenkins' home.

*Id.* at 1081. Here, the complainant identified items taken from the Defendant as those taken from the complainant during the robbery. Officers recovered some, but not all, of the items taken during the robbery from the Defendant. The outstanding items---cellular phones and an iPod---could easily be concealed in a residence. The Defendant identified the premises to be searched as his residence when arrested on the UUV charge. In combination with Detective Francis' experience, this evidence provided a reasonable basis from which the judge could infer that relevant evidence of the armed robbery would be found at the premises to be searched.

2.    <u>The Affidavit Did Not Rely on Stale Information.</u>

The Defendant also argues that the affidavit failed to establish probable cause because it relied on stale information, insofar as the complainant identified the items six days after the robbery purportedly occurred. None of the cases cited by the Defendant support this assertion. In *Sgro v. United States*, 287 U.S. 206 (1932), the Supreme Court held that when a search warrant issued pursuant to the National Prohibition Act was not executed within ten days as required by statute, the Government could not simply "redate[] and reissue[]" the warrant for a later date. *Id.* at 210. The Court thus rejected a warrant "reissued" twenty-one days later because "the commissioner took no proof to show that probable cause then existed." *Id.* at 212. The *Sgro* Court did not establish a specific timeframe in which information may become stale; rather it faulted the issuing authority for failing to make any probable cause finding when

14

approached with what was functionally a new application for a search warrant.  *Id.*  The Court's decision in *Sgro* is cited for the proposition that the facts supporting a warrant must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause," *id.* at 210, but this general statement of law provides little guidance as to whether information regarding an armed robbery is stale six days after the robbery.  The D.C. Circuit's decision in *United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001), is likewise unhelpful to the Defendant because it concerned information obtained more than 100 days before the warrant was issued. *Id.* at 904.  Moreover, in *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), the court faulted the affidavit for, among other flaws, failing to include any reference to when the controlled purchase of narcotics from the premises to be searched took place.  *Id.* at 486.

The Defendant offers no legal authority or argument from which the Court could conclude that the information included in Detective Francis' affidavit was stale.  Cellular telephones and iPods are not perishable items and provide "enduring utility" to the user.  *United States v. Bruner*, 657 F.2d 1278, 1298 (D.C. Cir. 1981) (quoting *Andresen v. State*, 331 A.2d 78, 106 (Md. 1975), *aff'd*, 427 U.S. 463 (1976)).  The affidavit provided strong evidence that the place to be searched was not a "criminal forum of convenience," but rather Defendant's current residence.  *Id.*  On this basis, it was reasonable for the judge, who would be informed of the date of the alleged offense, to conclude that the items in question may be recovered from the premises to be searched approximately one week after the robbery took place.   In any case, even if the information was legally stale, it was not unreasonable for Officers to believe the information in the affidavit established probable cause, therefore suppression is inappropriate.  *Webb*, 255 F.3d at 904-05.

15

C.      *Any Purported Misconduct Relating to the Search Warrant Return Does Not Warrant Suppression of the Evidence Seized During the Search*

For the first time in his Reply, the Defendant identified a purported discrepancy between two versions of the search warrant return.  Defendant's first exhibit, submitted with his initial motion, included a copy of the search warrant, with an unsigned return.  Def. Ex. 1 at 3.  The "inventory of property taken" listed, among other things, mail matter in the name of Eddie Burroughs, "9 huge Bags of MJ," multiple bags of different sizes containing crack cocaine, a "huge amount of U.S. Currency," and scales.  *Id.*  Defendant's third exhibit, attached to his Reply, is a copy of the return signed by Detective Francis as the executing officer, signed by a Judge, and dated March 22, 2012.  Def. Ex. 3.  In addition to all of the items identified in the inventory in Defendant's Exhibit 1, the inventory on the signed return lists "9.5 lbs weed," 114 grams of powder cocaine, 2.5 kilograms of crack cocaine, and $9,900 cash.  *Id.*  Upon inquiry from the Court, the Defendant explained that both documents were included in the file provided by Defendant's previous counsel.  Def.'s Suppl. ¶ 2.  The Defendant presumed that the Government provided Defense Counsel with both documents.  *Id.* at ¶ 3.  The Government clarified that officers left the unsigned version of the return at the residence in question after executing the search warrant as required.  Gov't Sur-Reply at 2.

The Defendant identifies two issues with the search warrant return.  First, the return was not signed until over three months after the warrant was executed.  Second, the Defendant alleges officers "added and changed the content of the warrant return," as evidenced by the differences between the inventory included on the copy left at the residence, and the inventory on the signed return.  Def.'s Reply at 4.  Defendant argues that "[t]he tampering with the search warrant return reflects an effort by law enforcement to prop-up a decision to seek a search warrant with an absence of probable cause."  *Id.* at 5.  Defendant's requested relief consists of:

(1) requiring the Government to produce the original search warrant; and (2) a "hearing on this matter."

1.     <u>Contents of the Search Warrant Returns.</u>

As an initial matter, the Court notes the Government has explained the "discrepancies" in the returns as identified by the Defendant.  D.C. Superior Court Rule of Criminal Procedure 41(e)(4) provides that "[a]n officer or agent executing a search warrant shall write and subscribe an inventory setting forth the time of the execution of the search warrant and the property or person seized under it."  Furthermore, if officers search a "place," a copy of the warrant and the return shall be given to the owner, if present, or posted on the place searched.  *Id.*  In this case, the Government explains that the unsigned copy of the search warrant and return, submitted as Defendant's Exhibit 1, was left at the residence in question after the search warrant was executed.  Gov't Sur-reply at 2.  The signed return, was completed by Detective Francis after the narcotics were weighed and the currency counted, and signed before a Superior Court Judge.

The Defendant contends that "[a] plain reading of the search warrant return filed with the Superior court reflects that law enforcement seized both '9.5 lbs of weed' *and* '9 huge bags MJ.'"  Def.'s Sur-reply at 3.  No reasonable jurist signing the return would read the inventory in this manner, for a number of reasons.  First, Defendant's interpretation would imply that officers brought scales to the apartment to weigh narcotics and took the time to count the currency seized while still in the apartment.  Second, Defendant's reading further implies that officers weighed *some* of the narcotics and counted *some* of the currency while still in the apartment, but did not weigh the "9 huge bags" or marijuana, other bags of narcotics, or the "huge amount" of currency.  Third, the notation regarding crack cocaine specifically indicates that the "total weight" was 2.5 kilograms.  Def. Ex. 3.  The differences between the two returns reflect only the completion of

the inventory after the seized evidence was removed from the premises, not malfeasance on the part of any MPD officers.

Notably absent from the Defendant's numerous pleadings is any authority for the position that additions or alterations to an inventory after leaving the premises requires suppression of the evidence seized during the search. To the contrary, even if officers had wholly omitted items from the inventory, the Court would not necessarily suppress the search warrant. For example, in *United States v. Motz*, 936 F.2d 1021 (9th Cir. 1991), the Ninth Circuit held that the failure to list 725 marijuana plants on the search warrant return and the filing of the return ten weeks after the search was not a basis to suppress evidence of the marijuana plants. *Id.* at 1025 ("The agents executed a valid search. [The defendants] were not prejudiced by the agents' failure to perform the ministerial requirements of Rule 41(d). The district court was correct in refusing to suppress the evidence."). In *United States v. Clark*, 934 F.2d 322 (6th Cir. 1991) (Table), officers failed to return the search warrant entirely, and thus the court was unable to make any determination as to whether the inventory was accurate. *Id.* at *3. Nevertheless, the Sixth Circuit held that absent a showing of prejudice, the failure to return the search warrant (including the inventory) as required by state law was not a basis for granting a motion to suppress. *Id.* at *4. At no point does the Defendant argue he was prejudiced by the addition of the weight of the narcotics or the amount of currency to the inventory on the signed search warrant return. Accordingly, the additions do not require suppressing the evidence recovered during the search.

In his Sur-reply, the Defendant also takes issue with the "significant differences regarding the officers listed as present when the inventory was made." The return left at the premises searched states that "[t]his inventory was made in the presence of" Detective Francis and Sergeant T. Best. Def.'s Ex. 1 at 3. The signed return indicated that the inventory was made

18

in the presence of Detective Francis, Detective Johnson, and Detective Bush.  The Defendant contends that "[f]or the unsuspecting Superior Court Judge signing the warrant return the physical presence of Sgt. Best at the inventory disappears and Detectives Johnson and Bush suddenly appear."  Def.'s Sur-reply at 3.  To the contrary, the difference between the returns is logical in light of the fact the documents were completed at two different times and in two different locations.  The unsigned return indicates that Detective Francis completed the inventory on the premises searched in the presence of Sergeant Best.  The signed return reflects the fact that Detective Francis weighed the narcotics, counted the currency, and added these items to the inventory in the presence of Detectives Johnson and Bush.  This difference between the returns is not surprising and does not reflect any nefarious conduct on the part of Detective Francis.

The Defendant argues in his Final Reply that he "is now prejudiced because the defense does not know exactly which officers observed the inventory."  Def.'s Final Reply ¶ 2.  From the face of the documents, the list is static: Sergeant Best may testify regarding the search of the residence, Detectives Johnson and Bush may testify regarding any examination of the evidence after the search; and Detective Francis may testify regarding both.  The Defendant is not prejudiced by the fact Detective Francis recorded the weight and amount of narcotics and currency seized, and did so in front of different officers than those present during the initial search.

The Defendant also takes issue with the fact that the signed return is not an exact photocopy of the inventory left at the premises at the conclusion of the search.[4]  The Court

_____

[4]  The Government indicates that the inventory left at the premises searched is referred to as a "receipt" and not a copy of the return.  Gov't Suppl. Sur-reply ¶ 2.  The Superior Court Rules and the cases the Court relies on often refer to the inventory as a "return."  *E.g.*, D.C. SCR-Crim. Rule 41(e)(4).  Accordingly, the Court shall refer to the inventory left at the premises

agrees that it would appear that Detective Francis re-wrote the original inventory, and added the weight of the narcotics and the amount of currency seized.  This is not surprising given the fact that the original inventory was written and left in the premises searched.  Moreover, the original inventory was copied verbatim.  The only differences lie in (1) the addition of the weight of the narcotics and amount of currency; (2) the officers present during the inventory; and (3) the explanation of where in the residence the copy of the inventory was placed.  Defendant did not raise the third issue, and as explained above, the first two issues do not reflect any misconduct on the part of Detective Francis.  The Defendant never claims that the return---unsigned or signed---was in anyway inaccurate.  The fact that Detective Francis may have re-written the original inventory before adding detail to certain items seized did not prejudice the Defendant and is not a basis for suppression.

2. <u>Late Return of the Search Warrant.</u>

In terms of the timing of the completion of the return, the Government admits that officers are required to file a copy of the warrant and a copy of the return with the issuing judge or magistrate "the next court day after its execution."  D.C. Code § 23-524(d).  That did not occur in this case; the warrant was not returned until several months after the search was performed.  The Defendant does not claim that the late return of the search warrant violated any of his constitutional rights.  Rather, the Defendant argues that the officers' failure to file a copy of the search warrant and return with the Superior Court within the statutorily prescribed time frame was "intentional and deliberate," and therefore requires suppression of the evidence seized during the search.

Initially, it does not appear that the "intentional and deliberate" standard applies in this

as the unsigned return.

case.  The D.C. Circuit squarely rejected the notion that failure to timely return a federal search warrant as required by Federal Rule of Criminal Procedure 41(d) provided a basis to suppress the results of a search warrant.  *United States v. Gerald*, 5 F.3d 563, 567 (D.C. Cir. 1993) (holding a five month delay in returning a search warrant "[did]not provide grounds for the suppression of the evidence obtained pursuant to the warrant")  The D.C. Court of Appeals similarly held that a violation of D.C. Code § 23-524(d) is a "non-constitutional defect" that in the absence of any prejudice does not "justif[y] the suppression of evidence that was seized from [the defendant's] home." *Artis v. United States*, 802 A.2d 959, 972 (D.C. 2002).  The *Artis* court acknowledged the "intentional and deliberate" standard, but expressed doubts as to its application in a case such as this, noting the test "appears to be more applicable to violations that preceded or accompanied the execution of the search warrant than to violations that were committed afterward. It is difficult to see why a court ever should suppress lawfully seized evidence because of non-prejudicial police misconduct that occurred *after* the fact." *Id.* at n.15.  The Ninth Circuit case relied on by the Defendant adopted a similar approach.  In *United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986), the court noted that an intentional and deliberate violation of Federal Rule of Criminal Procedure 41 may require suppression, but only "where agents would not have carried out the search and seizure had they been required to follow the rule." *Id.* at 1456.  The *Freitas* court held that the warrant did not comply with the requirements of Rule 41(d) regarding *obtaining* a warrant, and remanded the issue to the district court for further consideration if the district court first concluded the good faith exception did not apply.  The requirement that the search would not have taken place if officers had complied with Rule 41 by definition limits the application of the "intentional and deliberate" standard to pre-search procedures.

Assuming *arguendo* that an intentional and deliberate violation of D.C. Code § 23-524(d)

requires suppression of evidence seized pursuant to a search warrant, there is no evidence to suggest that Detective Francis' delay in this case was intentional or deliberate.  The Defendant contends that "the alteration of the inventory, coupled with the addition/deletion of the officers present, as well as the late filing of the search warrant return reflects that the executing officer intentionally and deliberately disregarded the mandates of [D.C. Superior Court] Rule 41." Def.'s Sur-reply at 5.  As outlined above, there was no malfeasance in the inventory or list of officers in the signed search warrant return.  The judge that signed the search warrant return could plainly see when the warrant was issued, when the warrant was executed, and the date on which the Judge was signing the return, three months later.

Thus, the only basis Defendant has to claim that the delay was intentional is the fact that the return was not filed until nine days after a status hearing in which the Defendant raised various discovery issues.  *See* 3/13/12 Minute Order.  However, there is no evidence to indicate that Detective Francis deliberately withheld the search warrant return or that the delay was anything more than inadvertent.  Courts faced with significantly stronger evidence of deliberate violations have declined to grant motions to suppress on the basis of similar ministerial violations.  *United States v. Stockheimer*, 807 F.2d 610, 614 (7th Cir. 1986) (upholding denial of motion to suppress despite evidence that agents misrepresented that they had left a copy of the return during the search, and after six years failed to provide the defendant with a copy of the search warrant).  The late return of the search warrant in this case, without more, "does not contravene any substantial policy . . . designed to protect the integrity of the federal courts or to govern the conduct of [police] officers."  *Id.*  Therefore, suppression is not appropriate.

The *Artis* court noted that suppression *might* be appropriate in cases in which the delay prejudiced the defendant, but Defendant Burroughs does not make any allegation of prejudice

based on the delay in this case. 802 A.2d at 972. The officers executing the search warrant left a copy of the warrant, including the return with an inventory of the property taken, at the premises searched. *Id.* The Defendant actually received the copy of the search warrant and return left at the residence. Def.'s Ex. 1. The Defendant has not shown he was harmed by the late return of the search warrant, therefore suppression is inappropriate. *Gerald*, 5 F.3d at 567; *United States v. Dudek*, 530 F.2d 684, 686, 691 (6th Cir. 1976) (holding that even though the inventory was not properly signed and the warrant was not returned until eleven months after the search was performed, the inventory was complete and the defendant failed to identify any prejudice from the delay, thus exclusion of the evidence was not required).

D. *Request to Inspect Original Search Warrant*

In his Sur-reply, the Defendant renews his request to inspect the original search warrant. Def.'s Sur-reply at 2. In response to the Court's inquiry, the Government indicated that the original search warrant no longer exists: it was shredded by the Special Proceedings Branch after the signed affidavit, search warrant, and return were scanned into its electronic database. Gov't Suppl. Sur-reply ¶ 3. The Government obtained a copy of the completed return from the Special Proceedings Branch database. *Id.* at ¶ 4. The Defendant claims that "[t]he record is absent as to whether Detective Francis kept copies of the executed or unexecuted return [sic]." Def.'s Final Reply ¶ 4. However, the Defendant fails to cite any authority that requires Detective Francis to maintain copies of these documents. Detective Francis returned the original documents to the Superior Court judge, albeit much later than required, who transferred the documents to the Special Proceedings Branch for scanning into the electronic database. No further inquiry regarding the handling of the search warrant is required.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Defendant has not provided any basis on which to suppress the evidence seized from 3400 13th Street, Southeast, Apartment 301, Washington, D.C.  The Defendant failed to make a substantial showing that the Officer who executed the affidavit filed in support of the search warrant application included any false statement, or omitted any material information that would have overcome the finding of probable cause, or did so with reckless disregard for the truth.  Accordingly, a *Franks* hearing is not necessary in this case.  Facially the affidavit stated sufficient facts from which the issuing judge could find probable cause.  Even if the warrant lacked probable cause, officers acted in good faith in relying on the affidavit, therefore the lack of probable cause is not a basis to suppress the evidence seized during the execution of the search warrant.  Finally, there is no evidence officers engaged in any "misconduct" relating to the return of the search warrant, and the untimely return of the search warrant is not itself a basis to suppress the evidence obtained as a result of the search.  Therefore, the Defendant's [20] Motion to Suppress Tangible Evidence & for Hearing Pursuant to *Franks v. Delaware* is DENIED.  An appropriate order accompanies this Memorandum Opinion.


            /s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE